## First Pennsylvania Bank v. Clearview Assocs., Inc.

*Dennis R. Suplee,* for plaintiff.
*Thomas M. Jackal,* for defendant.

KELTON, *J.*, January 30, 1985—The principal issue in this case is whether in proceedings to open judgment, defendant, a debtor on a judgment note given as collateral security for a line of bank credit, may assert a setoff against the creditor bank.

By the order which follows, we grant the petition of Clearview Associates, Inc. (Clearview to open a judgment entered by confession against it on a "one day after date" note in the face amount of $125,000.

Also for the equitable grounds which are explained below we believe that we should grant the petition of Clearview to stay execution on its real estate. See Pa. R.C.P. 3121(b)(2).

The original judgment note given by Clearview to First Pennsylvania Bank, N.A. (bank) had no stated interest rate, was dated November 16, 1979 and was given as collateral security for a business loan agreement entered into on that date between Clearview and the bank. That agreement established a line of credit whereby the bank agreed to make future loans of up to $125,000 to Clearview. The original note was filed with the prothonotary on November 20, 1979 and contains the exact same printed language as an instrument considered by Justice Flaherty of our Supreme Court in Lincoln Bank v. C & H Agency, Inc., 500 Pa. 294, 456 A.2d 136 (1982). That is, the note authorized a confession of judgment "for the above sum, as of any term past, present or future" for any debt incurred by Clearview in the past, present or future. In C & H Agency as well as in the instant case, there were loan advances as well as repayments after the recording of the original judgment.

In addition to the original judgment note which was filed with the prothonotary, Clearview also executed two other notes, a $45,000 promissory note dated November 16, 1979 and a $125,000 promisso-

ry note dated March 14, 1980. Neither of the latter two notes contains a confession of judgment clause and each calls for interest at two and one-half percent over the bank's moving prime rate.

On the issue of whether or not to open the judgment, both parties agree as to the exact amount of principal which Clearview now owes the bank on one or more of its note obligations, i.e., $84,500. The bank's original pre-execution assessment of damages filed by it on September 7, 1984 claimed the following amounts as then due:

| | |
|---|---|
| Principal Balance Due | $ 84,500.00 |
| Interest 7/1/83 to 9/5/84 | 13,309.08 |
| Collection fees at 20 percent | 16,900.00 |
| TOTAL | $114,709.08 |

Later, however, on November 5, 1984 after conference with the court, the bank filed a reassessment of damages claiming the following lesser amounts for interest and collection fees:

| | |
|---|---|
| Principal | $84,500.00 |
| Interest 8/1/83 to 11/5/84 | 6,417.37 |
| Collection fee | 8,500.00 |
| TOTAL | $99,417.37 |

Depositions of Gary D. Kunze, Clearview's President and of Brian Gallup, the bank's commercial loan officer have been taken. Based upon these depositions, we find that cash advances were made by the bank to Clearview at various times after November 1979 until sometime in March 1980. By that time Clearview owed the bank $125,000.

The parties agree that principal payments have been made over the years which reduced the overall indebtedness to $84,500 plus interest. How much interest is due is not clear, but the bank has conceded in its brief that it is willing to accept a calculation

of interest at the legal rate and to have a reasonable attorney's fee fixed by the court.

In its brief filed after the taking of the depositions ordered by the court, Clearview's chief argument is that it is entitled to a setoff against the judgment for a cross-claim which it allegedly has against the bank arising out of the alleged misconduct of various bank officials and a loan consultant, Frankel Associates, recommended by the bank. Clearview claims that Frankel Associates, acting in concert with the bank, promised to renegotiate the bank loans and that Frankel later reneged on the promise to re-finance the loan with a mortgage.

Without deciding finally on the merits of that claim, we would hold nevertheless that Mr. Kunze's depositions and accompanying exhibits have produced at least a sufficient amount of evidence to submit the matter to a jury trial.

Pa.R.C.P. 2959(e) provides that: "If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment." See also Kardos v. Morris, 470 Pa. 337, 368 A.2d 657 (1977). Here, Exhibit 111, a loan review report dated March 14, 1983 prepared by the bank's commercial loan officer Gallup for an Executive Vice President, a Senior Vice President, four other Vice Presidents and a Senior Banking Officer noted that Clearview's real estate was valued at $300,000 to $400,000 that the bank was referring Frankel Associates to Clearview and that: "I [Gallup] will contact Frankel Associates this week to start this process."

Clearview has claimed in its brief and also in a separate complaint filed to no. 84-7345-13-1 that it suffered business losses and was prevented from satisfying its outstanding debt to the bank because of the joint misrepresentations and conspiracy of the bank and Frankel in denying Clearview an ap-

propriate loan as promised. We believe the deposition evidence of Kunze is sufficient to create a jury issue.

The bank argues that under Citizens National Bank v. E. H. Bilowich Construction Corp., 303 Pa. Super. 200, 449 A.2d 648 (1983), it would be improper to permit Clearview's claim against the bank to be a set-off on the earlier confessed judgment. However, we note that in the Bilowich case in which set-off was disallowed, the original debt involved a mortgage note on a completed loan. In a companion case involving the same parties reported at 303 Pa. Super. 193, 449 A.2d 644 (1983), a set-off was allowed on other obligations. In that case there was a continuing line of credit involving a series of loan advances and repayments. In the companion case judgment was opened because of a potential jury issue involving improper practices of a bank officer in connection with the loan and its repayment.

One of the principal tests in determining whether or not a set-off should be allowed against the principal due on a confessed judgment is whether the "subject matter of defense is attached to the judgment or the consideration on which it rests." Bell Federal Savings and Loan Association v. Laura Lanes, Inc., 291 Pa. Super. 395, 435 A.2d 1285 (1981). Here, the consideration for the original judgment note was the continuing line of credit under the agreement of November 16, 1979 (Ex. 101). Under that agreement, if the bank was to be involved in continuously increasing, decreasing or refinancing the loan, a claim of setoff appears to us to be proper. Compare Lincoln Bank v. C & H Agency, Inc., supra, where a set-off was allowed in somewhat similar circumstances.

The bank also argues that the petition to open was not timely filed. However, since the instant

note was given prior to the lending of any funds by the bank, since it was originally given as collateral security without any intention of being enforced immediately after its entry, and since it was part of a continuing transaction, we find no unreasonable delay or laches. There was nothing to object to in 1979 when the judgment was first entered. Compare First Seneca Bank & Trust Co. v. Laurel Mountain Development Corp., 324 Pa. Super. 352, 471 A.2d 875 (1984), (petition for allowance of appeal granted) (affirming refusal to open judgment).

Finally, we also hold that whether or not the judgment should be opened, it would be inequitable to permit execution against defendant's real estate. The evidence indicates that the property involved is defendant's president's personal residence, that the bank's own internal memorandum reflects that it has a value greatly in excess of the judgment, that the bank in its brief concedes that it "would not oppose another 90-day extension of the sale date (conditioned again on Clearview's paying advertising costs) to enable Clearview to obtain new financing if the new date were truly the final. But fairness requires that Clearview not be permitted to attenuate things indefinitely."

We agree in part with the bank's position and will stay the sale for a reasonable period of time to permit the parties to litigate the merits of their differences either in this action or in Clearview's suit under no. 84-7345-13-1. Defendant has already paid $600 on account of advertising and we will not require any more at this time.

## ORDER

And now, January 30, 1985, the petition to open judgment is granted and the execution heretofore issued is hereby stayed.